# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| LORI SCOTT; ANNIE HUDSON; KELLY SCOTT; and WILLIAM SCOTT,<br><br>Plaintiffs,<br><br>vs.<br><br>SUSIE SCOTT WASHINGTON,<br><br>Defendant.<br>_____<br><br>SUSIE SCOTT WASHINGTON,<br><br>Cross Claimant/Counter Plaintiff,<br><br>vs.<br><br>LORI SCOTT; ANNIE HUDSON; KELLY SCOTT; and WILLIAM SCOTT,<br><br>Cross Defendants/Counter Defendants.[1] | No. 17-CV-2016 CJW<br><br>**ORDER** |

_____

## TABLE OF CONTENTS

I.   Procedural History ……………………………………………………………… 2
II.  Factual History…………………………………………………………………… 3
III. Applicable Law ………………………………………………………………… 5

---

[1] Although Susie Scott Washington is not a co-defendant with the cross defendants/counter defendants, and the cross claimant designation is therefore unusual, this procedural abnormality is explained in the "Procedural History" section, *infra*.

IV. Discussion ………………………………………………………………………… 6
   A.    Declaratory Judgment………………………………………………………. 6
   B.    Tortious Interference with Expected Inheritance ………………………… 9
V. Conclusion………………………………………………………………………. 12

This matter is before the Court on Lori Scott, Annie Hudson, Kelly Scott, and William Scott's (collectively "plaintiffs") Motion for Partial Summary Judgment. (Doc. 58). Plaintiffs seek summary judgment as to their action for declaratory relief and seek summary judgment as to liability, damages, and attorneys' fees and costs on their claim for tortious interference with inheritance. (Doc. 58, at 1). Plaintiffs do not seek summary judgment on the punitive damages portion of their tortious interference claim. (*Id.*). Defendant Susie Scott Washington timely filed her resistance to plaintiffs' motion. (Doc. 62).

## I.    PROCEDURAL HISTORY

This case began as an interpleader action with Todd Micou, Cynthia Scott, and all parties reflected in the case style named as defendants. (Doc. 2). On April 12, 2017, Susie Scott Washington ("defendant") brought a cross claim against Cynthia Scott, Todd Micou, Lori Scott, Annie Hudson, Kelly Scott, and William Scott. (Doc. 14). Cynthia Scott and Todd Micou failed to make an appearance, and a default judgment was ultimately entered against them, in their capacities as both defendants and cross defendants. (Docs. 38, 46, 57).

On August 14, 2017, Lori Scott, Annie Hudson, Kelly Scott, and William Scott were substituted as plaintiffs in this case, and the interpleader plaintiff was terminated. Defendant's cross claim was unresolved at the time the plaintiffs were substituted. On September 21, 2017, defendant brought a counterclaim against plaintiffs. (Doc. 51). This counterclaim appears to be the same, in all material respects, as the previously filed

and, as of yet, unresolved cross claim. Further, it appears that defendant brought the counterclaim only because plaintiffs amended their complaint, which prompted defendant to amend her answer and replead her claims. (Docs. 50-51). In short, it appears to the Court that defendant's cross claim and her counterclaim should be viewed as one and the same, although the counterclaim would reflect an updated version of the cross claim. The Court has not been called upon to resolve the issue of these multiple claims existing by different names, however, and the Court will not presently do so. As such, defendant's cross claim exists independently of her counterclaim and the parties are, therefore, properly styled above.

## II. FACTUAL HISTORY

This case has a complex factual background, and the Court finds it unnecessary to discuss many of the factual nuances presented. Further, the parties disagree as to many of the facts. It is agreed, however, that Bennie Scott, Jr. ("Bennie Scott") was covered under a life insurance policy and, upon his death on January 30, 2017, the life insurance benefits became payable. (Docs. 58-2, at 1-2; 62-1, at 1). At the time of Bennie Scott's death, the beneficiary designation for the policy reflected defendant as the beneficiary of the policy. (*Id.*). This beneficiary designation was made on January 22, 2017, and no prior beneficiary designations had been made. (*Id.*). In the absence of the January 22, 2017 beneficiary designation, the proceeds of the policy would, by default, be payable to Bennie Scott's children before his siblings. (Docs. 58-2, at 3; 62-1, at 1).

Defendant is Bennie Scott's sister, while plaintiffs are Bennie Scott's children. (Docs. 58-2, at 1-2; 62-1, at 1). The parties agree that had the January 22, 2017 designation not been made, Bennie Scott's children would be entitled to the life insurance proceeds. (Docs. 58-2, at 3; 62-1, at 1). Plaintiffs, collectively, and defendant each argue that they are entitled to the life insurance proceeds. Defendant argues that she is entitled to the proceeds because she was the designated beneficiary. Plaintiffs, however,

3

argue that the beneficiary designation was invalid because Bennie Scott was allegedly not mentally competent to sign the form on January 22, 2017, and the designation was the result of defendant either fraudulently falsifying Bennie Scott's signature, or exercising undue influence over Bennie Scott to the point of coercing Bennie Scott into signing the form. (Doc. 50, at 4). Further, plaintiffs suggested to the life insurance company that Cynthia Scott, a defaulting party, was Bennie Scott's intended beneficiary. (*Id.*).

Plaintiffs brought an action against defendant for declaratory relief and for tortious interference with expected inheritance. (Doc. 50). In their request for declaratory relief, plaintiffs "ask this Court to enter a declaratory judgment that they are the beneficiaries under the policy, and that [defendant has] no entitlement to the [life insurance] benefits and order that the benefits be paid to [plaintiffs]." (Doc. 50, at 5). Plaintiffs' claim for tortious interference is premised on the notion that defendant acted wrongfully. (*Id.*, at 6-7). If defendant committed no wrongful act—i.e., if defendant did not fraudulently procure Bennie Scott's signature on the beneficiary designation form—plaintiffs' tortious interference claim must fail.

Defendant's counterclaim only requests that the Court enter a declaratory judgment in her favor; the counterclaim contains no other claims. (Doc. 51, at 5). In support of her request for a declaratory judgment, defendant alleges that she "is the sole named beneficiary" of the life insurance policy and that none of the plaintiffs are entitled to proceeds from the life insurance policy. (*Id.*). Defendant therefore requests that the Court enter a declaratory judgment finding that defendant is the sole beneficiary of the life insurance policy and that "[p]laintiffs have no right, title[,] or claim to such benefits." (*Id.*). Unlike plaintiffs, however, defendant has not moved for summary judgment on any part of her counterclaim.

## III. APPLICABLE LAW

Summary judgment is appropriate when the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A movant must cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Alternatively, a party may "show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B).

A fact is "material" if it "might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). "An issue of material fact is genuine if it has a real basis in the record," *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citation omitted), or "when a reasonable jury could return a verdict for the nonmoving party on the question," *Wood v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (internal quotation marks and citation omitted). Evidence that presents only "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of fact genuine. In sum, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" that it "require[s] a jury or judge to resolve the parties' differing versions of the truth at trial." *Id.* at 249 (internal quotation marks omitted).

The party moving for summary judgment bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395. Once

the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or other evidence designate specific facts showing that there is a genuine issue for trial. *See Mosley v. City of Northwoods, Mo.*, 415 F.3d 908, 910 (8th Cir. 2005).

In determining whether a genuine issue of material fact exists, courts must view the evidence in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences that can be drawn from the facts. *Tolan*, 134 S. Ct. at 1863; *Matsushita*, 475 U.S. at 587-88 (citation omitted); *see also Reed v. City of St. Charles, Mo.*, 561 F.3d 788, 790 (8th Cir. 2009) (stating that in ruling on a motion for summary judgment, a court must view the facts "in a light most favorable to the non-moving party—as long as those facts are not so 'blatantly contradicted by the record . . . that no reasonable jury could believe' them") (alteration in original) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). A court does "not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004) (citation omitted). Rather, a "court's function is to determine whether a dispute about a material fact is genuine . . . ." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

## IV. DISCUSSION

### A. Declaratory Judgment

Although defendant has not moved for summary judgment and the Court therefore need not address the factual basis for defendant's claim, the Court finds it helpful to do so. By discussing the factual basis for defendant's claim alongside the factual bases for plaintiffs' claims, the Court may more easily explain why a genuine dispute of material fact exists such that summary judgment is inappropriate.

The Court notes that there seem to be a number of factual disputes, many of which may be material. Any one of these disputed material facts, however, will defeat

plaintiffs' motion for summary judgment. The Court will thus discuss only the matter of whether Bennie Scott signed the change of beneficiary form himself.

The Court will discuss this fact, as opposed to others, because this is the predicate fact upon which the claims at issue rest, and this fact "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. This fact is material as to the requests for declaratory judgment because plaintiffs request that the Court find that they are the rightful beneficiaries under the life insurance policy. Defendant requests that the Court make the same finding as to defendant. Who the rightful beneficiary is depends on whether the change of beneficiary was validly executed. This, in turn, depends on whether Bennie Scott signed the change of beneficiary form.[2]

In support of their motion for summary judgment, plaintiffs offer the deposition testimonies of defendant and of Mary Alexander, who appears to be Bennie Scott's double first cousin. (*See* 61, at 14). To the best of the Court's understanding, plaintiffs take the position that because the testimonies present certain inconsistencies, Bennie Scott could not have signed the change of beneficiary form. (Doc. 58-1, at 2-4). More specifically, plaintiffs allege that the deponents disagree as to whether defendant was sitting at the foot of Bennie Scott's bed when defendant handed the change of beneficiary form to Bennie Scott, or whether defendant walked into Bennie Scott's room and walked directly to Bennie Scott without sitting down. (Doc. 58-1, at 2-3). Plaintiffs further allege that the deponents each testified differently as to whether Bennie Scott used a supporting surface, such as a magazine, beneath the change of beneficiary form to support the paper while Bennie Scott signed it. (*Id.*, at 4). These inconsistencies, along with a slight date discrepancy, lead plaintiffs to conclude that Mary Alexander must have perjured herself. (*Id.*, at 2).

---

[2] The Court does not understand the parties to be arguing that anyone other than Bennie Scott could validly execute the form.

7

Mary Alexander also appears to have offered a letter in support of defendant's claim that Bennie Scott signed the form. (Doc. 61, at 14). Plaintiffs argue, however, that this letter is fraudulent. (Doc. 58-1, at 2). This argument is not well articulated, but to the best of the Court's understanding, plaintiffs argue that because Mary Alexander allegedly perjured herself, the letter is fraudulent, and, therefore, there can be no doubt that Bennie Scott did not sign the form. (*Id.*). Plaintiffs have also offered a report by their handwriting expert, in which the expert opines "that there is a strong probability that Bennie Scott did not sign the signature Bennie Scott on the beneficiary designation and change form." (Doc. 61, at 64). These facts, individually and together, plaintiffs argue, "plainly suggest that Bennie [Scott] did not sign the form, and therefore Plaintiffs are entitled to the life insurance proceeds." (*Id.*, at 4).

Plaintiffs, as the movants, are tasked with demonstrating that there is no genuine dispute. *Hartnagel*, 953 F.2d at 395. Plaintiffs have failed to do so. First, plaintiffs' expert witness opined that there is a "strong probability" that Bennie Scott did not sign the form (Doc. 61, at 64), while defendant maintains that Bennie Scott did sign the form (*see* Doc. 62-3, at 18). In opining that there is only a "strong probability" that Bennie Scott did not sign the form, plaintiffs' expert witness implicitly opined that there is *some* probability that Bennie Scott did sign the form. The Court must view the facts in the light most favorable to defendant. *Tolan*, 134 S. Ct. at 1863. Such a view leads the Court to conclude that Bennie Scott could have signed the form, which is consistent with defendant's position that Bennie Scott did sign the form.

Plaintiff could argue that the record so blatantly contradicts this conclusion that a reasonable factfinder could not find in favor of defendant. *See Reed*, 561 F.3d at 790. The Court, however, disagrees with this proposition. The record contains evidence both that Bennie Scott did sign the form and that Bennie Scott did not sign the form. Plaintiffs' argument that minor inconsistencies between the testimonies of defendant and of Mary

Alexander render it impossible for Bennie Scott to have signed the form is unconvincing. Were the Court to adopt plaintiffs' argument, the Court would be required to weigh the testimonies of defendant and of Mary Alexander, and the Court would have to determine whether each deponent is credible. The Court is not empowered to make such credibility determinations at the summary judgment stage. *Kammueller*, 383 F.3d at 784. Further, even if the Court found both witnesses to lack credibility on certain issues, such as the minor inconsistencies plaintiffs turn to, this credibility determination would not necessarily be applicable to *every* issue to which defendant and Mary Alexander testified. In other words, the Court could find a witness credible on one issue, but not credible on another issue. Likewise, the Court is not in a position to determine whether Mary Alexander perjured herself and, even if she did perjure herself, the Court could still find Mary Alexander credible on the issue of whether Bennie Scott signed the change of beneficiary form.

The Court is therefore unable to accept plaintiffs' proposition that they are entitled to summary judgment as a factual matter, based on the assertion that Bennie Scott could not have signed the change of beneficiary form. The Court is unable to conclude, at this stage, whether Bennie Scott signed the change of beneficiary form himself and, therefore, the issue should be decided by the factfinder at trial. Plaintiffs' motion for summary judgment as to declaratory relief is **denied**.

### B. *Tortious Interference with Expected Inheritance*

Plaintiffs next seek partial summary judgment as to liability and damages on their tortious interference with expected inheritance claim. The parties disagree as to whether Iowa law or federal law governs the tortious interference claim. (*See* Docs. 58-1, at 7; 62, at 9). The Court, however, need not determine which body of law governs.

In support of their motion, plaintiffs urge that Iowa law governs and provide a detailed discussion of why defendant should be considered to have been in a confidential

relationship with Bennie Scott under Iowa law. (Doc. 58-1, at 5-6). This confidential relationship, plaintiffs argue, shifts the burden to defendant "to prove by clear, satisfactory, and convincing evidence that she acted in good faith throughout the transactions and Bennie acted freely, intelligently, and voluntarily." (Doc. 58-1, at 6 (emphasis, citations, internal quotation marks, and alterations omitted)). Plaintiffs argue that defendant is unable to meet this burden because defendant cannot produce evidence showing Bennie Scott's true intentions and plaintiffs are, therefore, entitled to partial summary judgment on their tortious interference claim.

The Court's discussion of whether Bennie Scott signed the change of beneficiary form is equally applicable here. The parties agree that absent a beneficiary designation, plaintiffs would have been entitled to the proceeds of the life insurance policy. (Docs. 58-2, at 3; 62-1, at 1). Plaintiffs urge that this amounts to an expectancy interest. (Doc. 58-1, at 7-8). Plaintiffs further argue that defendant interfered with that expectancy interest by exerting undue influence over Bennie Scott to persuade him to designate defendant as the beneficiary of the life insurance policy. (*Id.*).

Without reaching the question of which body of law governs, the Court finds that plaintiffs have failed to show that defendant is incapable of proving "by clear, satisfactory, and convincing evidence that she acted in good faith throughout the transactions and Bennie acted freely, intelligently, and voluntarily." (*Id.*, at 6 (emphasis and alterations omitted) (quoting *Jackson v. Schrader*, 676 N.W.2d 599, 605 (Iowa 2004)). Plaintiffs contend that defendant bears this heavy burden. At the summary judgment stage, however, plaintiffs bear the burden of proving that defendant is incapable of meeting this burden at trial. In failing to point to any evidence in the record in support of their proposition that defendant cannot meet this burden, plaintiffs have failed to meet their own. In short, there is a genuine issue of material fact as to whether Bennie Scott signed the form of his own volition. Because, on this record, the factfinder could find

that Bennie Scott signed the form of his own volition, without anyone improperly interfering, plaintiffs' motion for partial summary judgment as to their tortious interference claim is **denied**.[3]

Even if the Court were to conclude that a factfinder could not find that Bennie Scott freely signed the form, summary judgment would still be inappropriate. Assuming, *in arguendo*, that Iowa law governs this issue and that the burden would therefore shift to defendant upon a showing that defendant enjoyed a confidential relationship with Bennie Scott, summary judgment still would not be warranted because plaintiffs have failed to show that defendant was in a confidential relationship with Bennie Scott.

Plaintiffs assert that defendant had a relationship based on trust and confidence for their whole lives. Plaintiffs' support for this proposition, however, is limited to actions taken in the twenty-five days prior to Bennie Scott's death. (*See* Doc. 58-1, at 5). The Supreme Court of Iowa has held:

> A confidential relationship arises whenever a continuous trust is reposed by one person in the skill and integrity of another, and so it has been said that all the variety of relations in which dominion may be exercised by one person fall within the general term "confidential relation."

*Mendenhall v. Judy*, 671 N.W.2d 452, 455 (Iowa 2003). Although Bennie Scott and defendant may have had a lifelong relationship that was based on trust, plaintiffs have only produced evidence showing that this relationship led Bennie Scott to rely on

---

[3] Defendant has not brought a motion seeking dismissal of plaintiffs' tortious interference claim. In defendant's resistance, however, defendant states: "Plaintiffs' state law claims for tortious interference with expected inheritance are . . . preempted by federal law and must be dismissed." (Doc. 62, at 15). Although this statement indicates that defendant is seeking dismissal of the tortious interference claim, defendant has not brought such a motion. To the extent defendant believes such a motion is somehow inferred, it is denied without prejudice. It is equally unclear whether plaintiffs' tortious interference claim is intended to have been brought under federal law or state law, and the Court will not presently address this issue, or whether the claim itself is proper.

defendant in the last several weeks of his life. Plaintiffs simply have not produced evidence showing that this relationship of "trust and confidence" existed prior to this time. (*See* Doc. 58-1, at 5).

The Supreme Court of Iowa opined that a confidential relationship could arise from "*continuous* trust." *Mendenhall*, 671 N.W.2d at 455 (emphasis added). It is possible that defendant had such a relationship with Bennie Scott. The Court, however, has not been presented with sufficient information to make such a determination.

Plaintiffs have presented facts that *could* indicate that Bennie Scott trusted defendant and that such trust was "continuous" within the meaning of *Mendenhall*. The inquiry the Court must make, however, is so fact intensive that the Court cannot properly reach a conclusion on the record before it. In other words, there is a genuine issue of material fact as to whether Bennie Scott and defendant had such a confidential relationship that it would shift the burden of proof to defendant. As such, the Court finds that plaintiffs have not met their burden of establishing the existence of a confidential relationship sufficiently at this stage to merit summary judgment on their behalf.

### V.   CONCLUSION

For the aforementioned reasons, plaintiffs' Motion for Partial Summary Judgment is **denied** in its entirety.

**IT IS SO ORDERED** this 20th day of June, 2018.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa